# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James F. Holderman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 3945 | **DATE** | 8/23/2010 |
| **CASE TITLE** | Jimmy Doe, et al. vs. Cook County, et al. | | |

**DOCKET ENTRY TEXT**

For the reasons set forth in the Statement section of this order, "Intervenor's Motion to Certify Court's June 23, 2010 Order as Final and Appealable Under Fed. R. Civ. P. 54(b)" [590] is granted. The court certifies its June 23, 2010 Order [589] as a final judgment that the Transitional Administrator's proposed staffing plan does not (1) exceed the scope of the TA's mandate; (2) impermissibly interfere with the state law bargaining rights of affected employees; (3) violate the affected employees' due process rights; or (4) violate the Prison Litigation Reform Act.

*/s/ James F. Holderman*

■[ For further details see text below.]  Notices mailed.

## STATEMENT

On June 23, 2010, this court entered a memorandum opinion and order approving the Transitional Administrator's ("TA") proposed staffing plan for the four new "Centers" to be created from the remaining living units at the Cook County Juvenile Detention Center ("JTDC"). (Dkt. No. 589.) Intervenor Teamsters Local 700 (the "Union") now seeks certification of the court's June 23, 2010 Order as final and appealable under Federal Rule of Civil Procedure 54(b). Rule 54(b) states:

> When an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b).

At the outset, this court must determine whether it has jurisdiction over the Union's pending Rule 54(b) motion. Seven days after filing its motion, the Union filed notice that it was appealing the June 23, 2010 Order to the Seventh Circuit. (Dkt. No. 595.) "The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Disc. Co.*, 459

# STATEMENT

U.S. 56, 58 (1982). The purpose of this bright line rule is to avoid any "danger [that] a district court and a court of appeals would be simultaneously analyzing the same judgment." *Id.* at 59. Recognizing this general concern, the Seventh Circuit has found the "potential for conflict between the district court and the court of appeals" to be virtually non-existent in cases such as this one, explicitly holding that district courts "have power to add a Rule 54(b) certification to an order after the filing of a notice of appeal." *Local P-171, Amalgamated Meat Cutters & Butcher Workmen of N. Am. v. Thompson Farms Co.*, 642 F.2d 1065, 1074-75 (7th Cir. 1981). Accordingly, this court proceeds to consider the merits of the Union's motion.

When reviewing a motion brought under Rule 54(b), this court "must first determine that it is dealing with a 'final judgment' . . . [and then] go on to determine whether there is any just reason for delay." *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 7-8 (1980). In this context, "judgment" means "a decision upon a cognizable claim for relief." *Id.* at 7. A judgment is considered "final" if it is "an ultimate disposition of an individual claim entered in the course of a multiple claims action." *Id.* (quoting *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 436 (1956)).

In cases of "institutional reform litigation" in which the court has ordered "extensive injunctive relief" in the form of a consent decree, courts will treat the postjudgment proceeding "as if it were a free-standing lawsuit" for purposes of identifying a final appealable judgment. *Bogard v. Wright*, 159 F.3d 1060, 1062 (7th Cir. 1998). However, this task is complicated when the underlying consent decree has no set termination date, and postjudgment appeals in such cases are generally limited to orders "granting, modifying, denying, refusing, continuing, dissolving, or refusing to modify or dissolve" the consent decree. *Id.* at 1062-63 (citing 28 U.S.C. § 1292(a)(1)). Postjudgment orders that interpret injunctions are not appealable under § 1292(a)(1), "provided they really are interpretative, and do not change the meaning of—that is, modify—the original injunction." *Assoc. of Cmty. Orgs. for Reform Now (ACORN) v. Ill. State Bd. of Elections*, 75 F.3d 304, 306 (7th Cir. 1996). Nevertheless, the Seventh Circuit has recognized that "interim" postjudgment orders may be appealable if they otherwise "meet[ ] the criteria for the appealability of interlocutory orders." *Id.*; *see also Gautreaux v. Chicago Housing Auth.*, 178 F.3d 951, 956 (7th Cir. 1999).

As an intervenor in this lawsuit, the Union has asserted a cognizable claim for relief from the TA's proposed staffing plan on the grounds that the plan exceeds the TA's authority and violates state, federal, and constitutional law. This court rejected the Union's claim for relief in its June 23, 2010 Order and approved the TA's proposed staffing plan in its entirety. The court's rejection of the Union's claim was dispositive of the legal issues raised by the Union and, therefore, final. As articulated by the Union in its pending motion, "the TA can now implement his plan, and the Union, having fully argued and briefed its objections, has no further recourse in the district court regarding that plan." (Dkt. No. 590 ¶ 5.)

The Union's claim regarding the TA's proposed staffing plan is also separable from any other claims remaining to be adjudicated in this lawsuit, insofar as these claims share "minimal factual overlap." *Continental Cas. Co. v. Anderson Excavating & Wrecking Co.*, 189 F.3d 512, 516 (7th Cir. 1999). At this point in the litigation, the only remaining question of law before this court is whether the TA has succeeded in bringing the JTDC into substantial compliance with the Memorandum of Agreement ("MOA"), the Agreed Supplemental Order ("ASO"), and the Modified Implementation Plan ("MIP"), such that these postjudgment proceedings can be properly brought to a close and administrative authority over the JTDC can be transferred to the Office of the Chief Judge of the Circuit Court of Cook County. The questions of law raised by the Union regarding the TA's authority to implement his proposed staffing plan share no overlapping facts or legal analysis in common with this ultimate determination.

| STATEMENT |
|---|

    Of course, as long as this litigation remains pending it is possible that the Union might raise additional concerns regarding the TA's actions—including concerns about the manner in which the TA's proposed staffing plan is carried out in practice. But these fact-specific concerns, should they arise, would be distinguishable from the overarching question of whether the TA has the legal authority to create new job descriptions at the JTDC and to require incumbent workers to "reapply" for these new positions as a matter of managerial policy. Similarly, even if the Union were to argue at some point in the future that the TA was not abiding by his agreement to bargain over "the length of time [otherwise qualified workers] have to obtain degrees and what assistance is available to help them do so," this court would not be revisiting any issues already decided in the June 23, 2010 Order. (*See* June 23, 2010 Order at 10 n.4 (finding that no question of "effects bargaining" under Illinois law was before the court).) Accordingly, this court finds that "no appellate court would have to decide the same issues more than once even if there were subsequent appeals." *Curtiss-Wright Corp.*, 446 U.S. at 8.

    Finally, the court considers whether there is any just reason for delay of the Union's appeal. In its June 23, 2010 Order, this court recognized "the reasonableness of the Union's speculation that some terminations 'will invariably follow' implementation of the TA's proposed staffing plan." (June 23, 2010 Order at 13.) Without an opportunity for appeal, the June 23, 2010 Order is likely to lead to "irrevocable consequences" of the type that "could not be undone when (if ever) the postjudgment proceeding ended with a showing of compliance." *Bogard*, 159 F.3d at 1063. This potentiality is especially concerning in light of the fact that the Union was not a party to any of the consent decrees that have led to the TA's proposed staffing plan. On the other hand, this court is also cognizant of "the TA's need for speed and flexibility" in "attempting to bring the JTDC into substantial compliance with the MOA and other court orders." (June 23, 2010 Order at 12.) For three years, the TA has operated under the mandate to "restructure" the JTDC, and the Union's appeal would inevitably impede this process. The courts, too, have an interest in avoiding "an avalanche of interlocutory appeals" in "complex and protracted" proceedings to enforce consent decrees. *Bogard*, 159 F.3d at 1063. In this eleven-year-old case, which throughout the bulk of its existence was presided over by Judge John Nordberg, the parties have represented to the court that the implementation of the TA's proposed staffing plan is the final major effort needed to bring the JTDC into substantial compliance with the MOA, ASO, and MIP. Appellate review of the TA's proposed staffing plan may very well have the effect of beginning the process of bringing this litigation to a close. Considering all of these factors, the court finds that the equities lie in favor of granting the Union's Rule 54(b) request.

    For the reasons set forth above, the court hereby certifies its June 23, 2010 Order as a final judgment that the Transitional Administrator's proposed staffing plan does not (1) exceed the scope of the TA's mandate; (2) impermissibly interfere with the state law bargaining rights of affected employees; (3) violate the affected employees' due process rights; or (4) violate the Prison Litigation Reform Act.