# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James F. Holderman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 3945 | **DATE** | 11/3/2010 |
| **CASE TITLE** | Jimmy Doe, et al. Vs. Cook County, et al. | | |

**DOCKET ENTRY TEXT**

For the reasons set forth in the Statement section of this order, Intervenor Teamsters Local 700's "Motion for Injunction or Stay Pending Appeal" [616] is denied. Status hearing set for November 23, 2010 at 9:00 a.m. for purposes of setting further dates as appropriate.

■[ For further details see text below.]    Notices mailed.

# STATEMENT

On June 23, 2010, this court entered a memorandum opinion and order approving the Transitional Administrator's ("TA") proposed staffing plan for the four new "Centers" to be created from the remaining living units at the Cook County Juvenile Detention Center ("JTDC"). (Dkt. No. 589.) On August 23, 2010, the court certified its June 23, 2010 Order under Rule 54(b) as a final judgment that the Transitional Administrator's proposed staffing plan does not (1) exceed the scope of the TA's mandate; (2) impermissibly interfere with the state law bargaining rights of affected employees; (3) violate the affected employees' due process rights; or (4) violate the Prison Litigation Reform Act. (Dkt. No. 611.)

Intervenor Teamsters Local 700 (the "Union") has appealed the court's June 23, 2010 Order and has filed a "Motion for Injunction or Stay Pending Appeal" (Dkt. No. 616), requesting that this court enjoin or stay the implementation of the TA's proposed staffing plan until the Seventh Circuit has ruled on the Union's appeal.

The Union seeks relief pursuant to Federal Rule of Civil Procedure 62(c), which permits district courts to "suspend, modify, restore, or grant an injunction . . . [on] terms that secure the opposing party's rights" during the appeal of an interlocutory order that itself "grants, dissolves, or denies an injunction." Fed. R. Civ. P. 62(c). One procedural twist in this case is that the Union's objections to the TA's proposed staffing plan were never explicitly described in terms of injunctive relief, perhaps because the TA is an agent of the court. The Union did, however, ask this court to re-direct the TA's activities and order the TA to undertake certain obligations. (*See* Dkt. No. 573 ("Union's Final Reply") at 15.) Insofar as this court's June 23, 2010 Order can be viewed as an order "den[ying] an injunction," this court finds that it is authorized under Rule 62(c) to enjoin the implementation of the TA's proposed staffing plan during the pendency of the Union's appeal.

Regardless, the same standard applies to the Union's motion whether it is considered a motion for an injunction pending appeal or a motion for a stay of this court's June 23, 2010 Order. *Cavel Int'l, Inc. v. Madigan*, 500 F.3d 544, 547 (7th Cir. 2007). "If an appeal has no merit at all, an injunction pending the appeal should of course be denied." *Id.* However, as long as the Union's appeal has "some" merit, *id.*, this court must consider whether the Union has met its burden of demonstrating "[1] that it has a significant

probability of success on the merits; [2] that it will face irreparable harm absent a stay; and [3] that a stay will not injure the opposing party and will be in the public interest." *Hinrichs v. Bosma*, 440 F.3d 393, 396 (7th Cir. 2006). The court applies a "sliding scale" approach to this balancing test, "weighting harm to a party by the merit of his case." *Cavel Int'l*, 500 F.3d at 547. The greater the harm, the less need to demonstrate a strong likelihood of success on the merits. *Thomas v. City of Evanston*, 636 F. Supp. 587, 591 (N.D. Ill. 1986) (Aspen, J.).

The Union first argues that JTDC employees will be irreparably harmed if they are discharged under the TA's proposed staffing plan. Of necessity, this argument is speculative. It is not clear how many, if any, JTDC employees will be discharged as a result of the implementation of the TA's proposed staffing plan. The TA's proposed staffing plan calls for incumbent JTDC direct care workers to pass a series of interviews and screening procedures (*see* Dkt. No. 616, Ex. A ("TA Bulletin #142 and Attachments")), and it is impossible to guess how many employees will successfully complete this process. Nevertheless, this court has previously "agree[d] with the reasonableness of the Union's speculation that some terminations 'will invariably follow' implementation of the TA's proposed staffing plan." (6/23/10 Order 13 (citation omitted).)

The next relevant question on the issue of irreparable harm is timing. The Union has articulated no irreparable harm associated with its members participating in the screening and interviewing process. Accordingly, if it is clear that no employees will be discharged prior to the resolution of the Union's appeal, there is no need to stay the implementation of the TA's proposed staffing plan. The TA predicts "that the screening and interviewing process for the YDS/YDS-A positions will last several months, and will be complete soon after January 1, 2011." (Dkt. No. 622 ("TA's Resp.") at 3.) The TA has committed to retaining all JTDC employees who participate in the screening and interviewing process "until at least January 1, regardless of how they score on the IMPACT test or how they fare during the interview process." (*Id.*) Briefing on appeal is scheduled to conclude on December 8, 2010, and none of the parties has sought an expedited briefing schedule on appeal. In light of this schedule, this court finds it unlikely—although certainly not impossible—that the Seventh Circuit will rule on the Union's appeal before January 1, 2011. It therefore would appear that at least some JTDC employees will be discharged pursuant to the TA's proposed staffing plan during the pendency of the Union's appeal, absent the relief requested by the Union.

In general, the termination of an employment relationship is *not* considered an irreparable harm. *Bedrossian v. Northwestern Mem. Hosp.*, 409 F.3d 840, 845-46 (7th Cir. 2005) (citing *Sampson v. Murray*, 415 U.S. 61, 92 & n.68 (1974)). Likewise, the typical injuries arising from an allegedly wrongful termination, such as humiliation, damage to reputation, and loss of income, are not themselves considered irreparable. *Id.* The Union argues that this case is different, insofar as "the affected employees will have no recourse, whether through reinstatement or money damages, against the Chief Judge after he takes over from the TA." (Dkt. No. 617 ("Union's Mem.") at 4.) The Union likens the upcoming transfer of authority to the Office of the Chief Judge of the Circuit Court of Cook County ("OCJ") to the case of *Local Lodge No. 1266, International Association of Machinists & Aerospace Workers v. Panoramic Corp.*, in which the Seventh Circuit found there to be a potential for a "permanent loss of jobs"—and irreparable harm—when the new employer had "no duty to rehire" employees who had been slated for termination upon sale of the company. *Local Lodge No. 1266, Int'l Ass'n of Machinists & Aerospace Workers v. Panoramic Corp.*, 668 F.2d 276, 286 (7th Cir. 1981).

Again, the issue of timing is relevant. Unlike in *Panoramic Corp.*, there is currently no date set for the upcoming transfer of authority to the OCJ, nor will the transfer of authority inevitably result from the denial of the Union's request for an injunction. The TA has predicted that "other issues will keep him occupied at the JTDC well into 2011, such as improving the physical plant, installing cameras, and bringing health care delivery up to standards." (TA's Resp. 11.) Plaintiffs agree with this assessment (Dkt. No. 621 ("Pls.' Resp.") at 12), and the Union does not argue otherwise. From its past experience with this litigation,

this court finds it unlikely that the TA's assignment will conclude at any point in the near future, and agrees with Plaintiffs that "the TA almost certainly will be at the JTDC to grant relief if the Seventh Circuit reverses the Order." (*Id.* at 13.) Under these circumstances, the Union has not shown that it will face irreparable harm absent an injunction of the TA's proposed staffing plan.

The Union next argues that neither the Plaintiffs nor the public interest will be prejudiced if the TA's proposed staffing plan is enjoined, because "the delay engendered by the Union's appeal will be comparatively short" and "there is no evidence that constitutional violations remain at the JTDC." (Union's Mem. 14-15.) It is undisputed that, on May 8, 2008, Judge Nordberg found that "the JTDC is dangerously understaffed and . . . the health and safety of residents is at risk." (Dkt. No. 415 ("5/8/08 Order") ¶ 3.) Since that time, there have been no further hearings to determine whether there are ongoing constitutional violations at the JTDC. The Union is therefore correct in stating that there has been no evidence presented to the court on this issue. However, the court finds it unduly risky to conclude from this lack of evidence that there are no ongoing constitutional violations at the JTDC. Indeed, in light of the fact that no party to this litigation has yet sought the termination of these post-judgment proceedings, the court finds it likely that this is not the situation. As Plaintiffs note, "every day that the young residents endure unsafe conditions and inadequate services is harmful." (Pls.' Resp. 13-14.) The public also has an interest in seeing this important, and protracted, litigation brought to a close. As this court has previously noted, "the parties have represented to the court that the implementation of the TA's proposed staffing plan is the final major effort needed to bring the JTDC into substantial compliance with the MOA, ASO, and MIP." (8/23/10 Order 3.) A stay of the TA's proposed staffing plan will cost Cook County taxpayers the expenses of additional planning, extended contracts for temporary services, and additional exposure to liability, and will extend the "state of limbo" (TA's Resp. 13) under which the TA currently labors. The court therefore rejects the Union's argument that no party would be harmed if the court were to enjoin the implementation of the TA's proposed staffing plan.

Finally, the Union argues that it has made a "strong showing" of success on the merits of its appeal. This court agrees that the Union has met its burden of presenting a "not negligible" chance of success on the merits, in that its appeal has "some" merit. *Cavel Int'l*, 500 F.3d at 547, 548. However, this court is not persuaded that the Union has demonstrated a "significant probability of success on the merits." *Hinrichs*, 440 F.3d at 396. In support of its position on this point, the Union generally rehashes arguments previously raised before this court. As Judge Aspen has eloquently stated, "Obviously, we think an appeal will probably fail; we have reviewed our opinion and stand by it. Had we thought an appeal would be successful, we would not have ruled as we did in the first place." *Thomas*, 636 F. Supp. at 590. Where the other factors discussed above do not favor a stay, the Union's arguments regarding the merits of its appeal do not persuade this court that an injunction of the TA's proposed staffing plan is warranted.

The court recognizes that its decision today might appear at first reading to be at odds with its August 23, 2010 Order finding no just reason to delay the Union's appeal. However, different factors were relevant to each analysis. In its August 23, 2010 Order, the court focused, in part, on the TA's role in shaping institutional reform at the JTDC, and the inherent difficulties of later requiring another institution (the OCJ) to "undo" any harm caused by the implementation of the TA's proposed staffing plan. However, the unique nature of this complex case has also led this court to conclude that the equities do not lie in favor of enjoining the implementation of the TA's proposed staffing plan at this time, as discussed above. Accordingly, the Union's "Motion for Injunction or Stay Pending Appeal" (Dkt. No. 616) is denied.

*James F. Holderman*

| | Courtroom Deputy Initials: | A.M.M. |
|---|---|---|