

**OFFICE OF THE TRANSITIONAL ADMINISTRATOR**
**Cook County Juvenile Temporary Detention Center**
**1100 S. Hamilton Avenue, Chicago, IL 60612**
**TEL (312) 433-7102**
**FAX (312) 433-6644**

July 16, 2014

Honorable Timothy C. Evans
Chief Judge of the Circuit Court of Cook County
Daley Center, 50 W. Washington, Suite 2600
Chicago, IL 60602

> *Re:* *Transition of the JTDC from the Office of the Transitional Administrator*
> *to the Office of the Chief Judge*

Dear Chief Judge Evans,

As you know, since late 2013 through the early months of 2014, we have had several discussions and related correspondence on the matter of the transition of the JTDC to your office. These discussions and correspondence included, but were not limited to, the concept of forming "Transitional Work Groups" ("TWG"). In light of Judge Holderman's May 8, 2014 Order, it may be prudent for our respective Offices to appoint a smaller TWG than originally contemplated (3-4 people each). The focus would be developing a strategy for a smooth, and to the extent possible, seamless Transition of the JTDC. It would be my recommendation that these individuals have sufficient authority or empowerment to make the necessary recommendations toward achieving a successful Transition in accordance with the August 14, 2007 Order Appointing a Transitional Administrator (specifically paragraphs 9 and 11).

In order for me to achieve compliance with the above referenced paragraphs of the Order Appointing a Transitional Administrator, it is absolutely essential that our respective Offices collaborate on the following issues, which are not all inclusive:

- **Provisions subject to an Orderly Transition to the OCJ**
    1. Appointment of an Executive Director and Reporting Structure
    2. Transition Strategy (Incremental/Complete)
    3. Recruitment, Screening and Hiring Process for Employees
    4. Business and Finance
    5. MIS Transition Plan from Cook County Bureau of Technology
    6. Labor Contracts (Reform sustainability)

Honorable Timothy C. Evans
July 16, 2014
Page 2 of 2

- **Other Issues**
    1. JTDC Rated Bed Capacity/Functional Operating Capacity/Renovation Capacity
    2. Raise the Age Legislation
        a. Criminal Court and Juvenile Court Standing
        b. Plan for Overcrowding
    3. CPS Educational/Vocational/Higher Education Services (Juveniles and Adult Transfers)
    4. Medical/Mental Health Services
    5. Employment Compensation (agreement by County and OCJ to continue to advance step certain positions)
    6. AOIC funding for qualifying positions
    7. Continuation of hiring staff prior to receiving AOIC certification in order to maintain sufficient staffing levels
    8. Juvenile Detention Counselor – Support Clerk positions (pursuant to Federal Court Order dated March 12, 2009)
    9. Retention of consultants (RMIS and video technology consultant)
    10. Process for managing Juvenile and Criminal Court Orders
    11. Discussion of continuation of G4S and Career Builder contracts
    12. Retention of the Deputy TA for Personnel on contract
    13. Shakman
    14. Clarification of the JTDC Advisory Board appointed by the County
    15. Continuation of the JTDC 501c3

The aforementioned issues were discussed in some detail at the most recent *Doe* Party meeting held on April 29, 2014. As time is of the essence, it is imperative the TWG convenes no later than August 1, 2014 and continue to meet on a consistent basis. As you know, I am compelled to report to the Federal Court and *Doe* Parties as to the outcome of any Transition Plan.

I would very appreciative of an expeditious response to this proposal in order to allow for work to begin immediately.

Sincerely,

Earl L. Dunlap
Transitional Administrator

cc:     Benjamin Wolf, Roger Baldwin Foundation of ACLU
        Tom Geraghty, Northwestern University School of Law
        John Curran, State's Attorney's Office
        Andrew Creighton, State's Attorney's Office
        Elizabeth Mazur, Loevy & Loevy
        Steven Art, Loevy & Loevy
        David Roush, Consultant to the Office of the Transitional Administrator
        Brenda Welch, Deputy Transitional Administrator, JTDC
        Teresa Abreu, Acting Executive Director, JTDC



**OFFICE OF THE TRANSITIONAL ADMINISTRATOR**
**Cook County Juvenile Temporary Detention Center**
**1100 S. Hamilton Avenue, Chicago, IL 60612**
**TEL (312) 433-7102**
**FAX (312) 433-6644**

September 5, 2014

The Honorable Timothy C. Evans
Chief Judge of the Circuit Court of Cook County
50 W. Washington, Suite 2600
Chicago, IL 60602

Re: *Cook County Juvenile Temporary Detention Center (CCJTDC) Transition*

Dear Chief Judge Evans,

Thank you for the considerable time you allowed the Office of the Transitional Administrator (OTA) and members of the Cook County Juvenile Temporary Detention Center (CCJTDC) Executive Staff to meet with you and your Executive Staff on September 3, 2014. Although there was a considerable amount of information presented, please be advised we presented the broad categories with examples which were not inclusive of all issues in each category. We recommend the minute details to be managed by subject matter experts in our respective offices.

Per your request, I have enclosed documentation regarding our discussion on September 3, 2014 regarding transition of the CCJTDC from the OTA to the Office of the Chief Judge (OCJ).

As indicated during our meeting, I will be submitting a status report to Judge Holderman on September 18, 2014 and am required to submit a plan for the post TA operation of the CCJTDC at least 60 days prior to the termination of my appointment (October 1, 2014). By court order, this plan must include the following:

- Consideration of the structure, funding and transition to the governmental agencies responsible for the long term operation of the CCJTDC.
- An assessment of the capacity of the CCJTDC for transitioning administrative and operational authority to the Chief Judge.
- Obtain input from the Chief Judge to foster an efficient and orderly transition.

The documentation attached details the current operations of the CCJTDC and the status of the capacity to transition the specific operation to the OCJ. In addition, recommendations have been included for your consideration when making decisions regarding the future operations during your jurisdiction.

The Honorable Timothy C. Evans
September 5, 2014
Page 2 of 2

The post OTA operational plan cannot be accomplished absent of your input. We are requesting the transition plan to be a joint effort between the OTA and the OCJ.

Please let me know if you require any additional information.

Sincerely,

Earl L. Dunlap
Transitional Administrator

Enclosure

cc:     Stephen Brandt, Acting Director of Legal Research
        James Anderson, Executive Officer, Chief Financial Officer
        Laura Kelly, Interim Director of Human Resources
        Michael Carroll, Director of Information Services
        Joseph Gagliardo, Managing Partner, Laner, Muchin, Ltd
        Brenda Welch, Deputy Transitional Administrator
        Robert Dugan, Consultant to the Transitional Administrator
        Teresa Abreu, Acting Executive Director
        Zenaida Alonzo, Acting DED/Chief Legal Counsel

**Transition Strategy**

1. According to the Order Appointing the Transitional Administrator (TA), the transition will take place upon agreement of the parties or upon a showing of substantial compliance. Substantial Compliance was never defined and the parties agree the TA makes such determination. Various sections of the MOA/MIP are substantial, partial, noncompliance, request for modification (special treatment units) and subject to an orderly transition to the OCJ (technology, personnel issues, grievance process, etc.). The sections classified as "subject to an orderly transition to the OCJ" are processes that either cannot be sustainable under the operation of the OCJ or requires a decision from the OCJ to move forward toward compliance. Quality Assurance provisions are not in substantial compliance and are contingent on the RMIS currently under the RFP process (to be discussed in the narrative regarding Information Technology Issues).

   Although the JTDC is not in substantial compliance with all provisions of the MOA/MIP, the TA is of the opinion that if a framework is established for compliance and the OCJ agrees to continued compliance with the provisions of the MOA/MIP and agrees to the plan, transition may occur. OCJ's disagreements and intent to modify should be noted in the transition plan to the court. For example, the TA has determined special needs units at the CCJTDC are not in the best interest of the children housed at the CCJTDC or fiscally responsible; confinement for purposes of protective custody is prohibited, therapeutic and chemical restraints are prohibited. The MIP requires the MIS function to be transferred to the Cook County Bureau of Technology. There are systems in place that cannot be sustainable upon transition (employee grievance process, refusal to arbitrate personnel decisions).

   **Recommendation:** Appointment of one of more representatives of the OCJ, OTA, JTDC and Cook County to determine appropriate course of action for the provisions in the MOA/MIP currently classified as requests for modification, subject to an orderly transition, partial and noncompliance. Provide input as to the direction of the OCJ in regards to continued compliance with the federal court provisions and the reform strategies that have been implemented.

2. The Order also allows for partial transition of any function of the CCJTDC. An orderly transition is contingent on the OCJ's determination of the mission of the CCJTDC and organizational structure of the JTDC (center within a center reform platform) and the organizational structure between the OCJ and the JTDC (i.e. reporting structure and appointment of an Executive Director. When meeting with the budget office, OCJ representatives indicated a determination could not be made without the input of the appointed Executive Director. Decisions will need to be made regarding the transfer of those decisions currently made by the OTA to the Executive Director and/or OCJ. As the JTDC is a 24/7 operation, immediate decisions are often required. There is a multitude of complex issues and decisions to be made that may require policy changes, additional personnel (budget is approaching).

   **Recommendation:** Determine if partial or full transition will occur and establish time lines associated with the transition.

   **Recommendation:** The appointed Executive Director will have an opportunity to observe the operations and work with the Executive Team prior to full transition.

   **Recommendation:** Define the organizational and reporting structure between the OCJ and the CCJTDC. Determine the scope of empowerment for the Executive Director and the OCJ. Action steps with associated time frames will need to be established to modify policy and practice.

3. There are three capital projects which are critical to the transition that require progress prior to transition: RMIS, gym renovations, and outdoor recreation yard renovations.

   **Recommendation:** Appoint a contact person for each project to work with the OTA to establish the framework required for transition. RMIS issues need immediate resolution.

4. Space Issues: Office Space for the additional personnel requested in the 2015 budget is an issue. In addition, the CCJTDC is in need of additional storage space for documents. A new records retention application will need to be submitted for approval once all of the policies and forms have been developed and approved.

   **Recommendation:** Appoint an OCJ representative to work with the CCJTDC and Facilities Management to procure space within the building for the additional staff. Retention Records issues will need to be addressed post transition.

## Information Technology

1. OTA Consultant Bob Dugan presented an overview of the technology concerns during the meeting and provided a handout for your reference. A meeting has been scheduled for September 9, 2014 with the Cook County Bureau of Technology, OTA Consultant Bob Dugan, CCJTDC staff and OCJ staff to discuss time sensitive issues for resolution.

   **Recommendation**: Decisions regarding the time line for transition of JTDC technology from the Cook County Bureau of Technology to the OCJ need to be agreed upon between the agencies and included in the transition plan.

   **Recommendation:** CCJTDC IT remains under the Bureau of Technology through completion of major technology projects currently in progress.

   **Recommendation:** The OCJ agree to a cloud hosted solution for the CCJTDC Resident Information System.

## Labor Contract/Negotiations/Legal Issues

1. Reform sustainability is contingent on negotiating collective bargaining agreements with respective unions. Priority labor issues include, but are not limited to, seniority, schedules, overtime provisions, discipline procedure, employee grievance process, and ensuring the "center within a center" concept currently in place.

   **Recommendation:** Reach tentative agreements on priority sections of the CBAs. Initiate and secure commitments on issues which could jeopardize the reforms that have been accomplished.

2. The JTDC advised there are 30 pending cases, most of which are employee related. There are over 300 pending requests for arbitration (4th step grievances). CCJTDC attorneys have managed the pending cases. As stated in the meeting, the OTA has elected not to participate in the arbitration process. The OCJ will not be able to sustain this practice. In addition, Deputy Transitional Administrator Burger currently hears all employee pre-disciplinary hearings and also manages the third level grievance process.

   **Recommendation:** Decisions will need to be made prior to transition regarding the employee disciplinary process and grievance process. DTA Burger will not be available through the utilization

of OTA funds. Funds have been requested in the budget for this position. The process and selection and training of staff need to be finalized prior to transition.

## Recruitment/Screening/Hiring Process

1. The OTA has been utilizing the services of CareerBuilder for recruitment, screening, scheduling, testing, interviews, and processing work flow of the hiring processes. The CCJTDC has included CareerBuilder as a contractual line item in the 2015 budget as well as the alternative CCJTDC positions.

   **Recommendation:** Decision will need to be made on whether CareerBuilder will continue to be utilized post-transition.

2. G4S Security Services has been utilized to fill staff vacancies. The time frame from job posting to assuming a post position is approximately 4.5 months. To reduce mandated 16 hour shifts, Wackenhut is used to temporarily fill these positions until permanent positions are on boarded. In addition, G4S employees meet the educational requirements and must pass all testing and background checks as CCJTDC employees. The CCJTDC routinely hires the G4S employees who have demonstrated their ability to perform their duties.

   **Recommendation:** Maintain G4S services.

3. It should be noted, the CCJTDC extends job offers contingent on obtaining AOIC certification to reduce additional delays in the hiring process.

   **Recommendation:** Continue the practice subject to a solution which would not delay the hiring process.

## Business/Finance/Human Resources

1. The JTDC routinely uses provisions in the Order Appointing a Transitional Administrator to obtain goods and services outside the scope of Cook County Procurement procedures. The OCJ will need to find solutions for emergency goods and services.

   **Recommendation:** Meet with county procurement to find a solution for expedited expenditures or an in house emergency fund.

2. The Business and Finance decisions have been managed by the OTA with board authority granted to the Acting Executive Director. Decisions will need to be made regarding the extent of involvement with representatives of the OCJ.

   **Recommendation:** Determine the scope of responsibility/authority and reporting procedures between the CCJTDC and the OCJ.

3. All firing and employee transactions (disciplinary actions including suspensions and terminations) have been made by the TA. Decisions will need to be made regarding the extent of involvement in these matters with representatives of the OCJ.

   **Recommendation:** Determine the scope of responsibility/authority between the CCJTDC and the OCJ.

4. Mid-level Supervisory and Executive staff have been hired at salaries commensurate with the assigned responsibilities and experience (advance steps). Representatives from the CCJTDC and the OCJ need to meet to understand the rationale and repercussions for a change in this practice.

   **Recommendation:** Meet with County Personnel to secure an agreement on specific advance stepped positions.

## Other Issues

Other transitional issues which were discussed either briefly or not at all are as follows:

1. Rated Bed Capacity
2. Raise the Age Impact and plan for overcrowding
3. CPS Educational/Vocational/Alternative Education Services (Juveniles and Adult Transfers)
4. Medical and Mental Health Services
5. Support Clerk Positions
6. Retention of consultants
7. Process of managing Juvenile and Criminal Court Orders
8. JTDC Advisory Board appointed by the Cook County President's Office
9. JTDC 501c(3)



Cook County Juvenile Temporary Detention Center
1100 S. Hamilton Avenue, Chicago, IL 60612
TEL (312) 433-7102
FAX (312) 433-6644

September 16, 2014

The Honorable Timothy C. Evans
Chief Judge of the Circuit Court of Cook County
50 West Washington, Suite 2600
Chicago, Il 60602

Dear Chief Judge Evans,

Thank you for your letter dated Friday, September 12, 2014. It was delivered to a representative from my office late afternoon on Monday, September 15, 2014.

As you know, I have been aggressively pursuing a collaborative effort between the OTA and the OCJ in regard to the JTDC transition strategy. I proposed transition work groups in December of 2013 and reiterated my request for the appointment of persons from our respective offices several times via letters and most recently during the September 3, 2014. I was under the impression that you were in agreement and another meeting would be scheduled after you had the opportunity to meet with your colleagues and after the September 9, 2014 technology meeting. I find no indication of any future meetings referenced in your letter. You did reference your intent to have an Executive Director on board by early October to ensure there is ample time for us to work together and complete the transition. While I appreciate your optimism, transition involves resolving some complex issues which simply cannot be accomplished in a short period of time due to its many complexities and unanswered questions.

As was indicated at our meeting on September 3, 2014 and emphasized in my last correspondence dated September 5, 2014, I am required by the federal court to submit a plan for the post TA operations at least 60 days prior to the termination of my appointment which would be October 1, 2014 for November 30, 2014 transition date. Although we have met and identified the transition issues, there has been no progress in resolving any of the issues imperative to a seamless transition.

I am somewhat confused regarding your most recent request for documents and other related information. We have ensured your office has received documentation as it has become available and have delivered vast amounts of documents to your office. In addition, we have responded to all requests for information and documentation on a continuous basis as a part of standard protocol, through your Special Assistant, Dr. Beverly Butler and at your specific request. Yesterday, we received two requests from your staff for documents that you had requested in your most recent correspondence. In addition, you or members of your staff are already in receipt of much of the documentation you requested. Some of the documents have been tendered many times. In addition, your staff has been present at meetings with Cook County Procurement, Cook County Bureau of Technology and representatives from the JTDC and OTA in which many of these documents have been discussed in detail. You have requested some information that is beyond the scope of the OTA and JTDC to address. This will be addressed in the narrative under the answers to your questions later in this correspondence.

I am of the opinion, work groups or conversation between key staff is more effective than responding to emails and providing written justification. The ping pong approach of sending letters and responding to requests for documents, justifications and opinions is ineffective, labor intensive, may often lead to confusion and will most likely impede the transition.

Responses to your inquiries are provided below:

### Business/Finance

1. Expedited expenditures - You requested examples of situations in which the JTDC has had to acquire goods and services on an expedited basis, necessitating the use of OTA funds or county funds secured outside the boundaries of the Cook County procurement practices and policies.

Response: Ms. Welch provided many examples during the September 3, 2014 meeting. The written documentation pursuant to your request follows:

The following are examples of expedited and routine expenditures using the authority provided by the federal court to secure goods or services utilizing JTDC funds:

a) Kitchen Supplies: The JTDC routinely used Granger as the Marketplace vendor (no contract required) for kitchen supplies. The Marketplace removed Granger as a vendor with no advance notice. The JTDC has been securing goods through several vendors (Hubert, Central Restaurant Supplies) and have exceeded the $5000.00 cap for purchasing from any one vendor in a fiscal year.

b) Ergometrics- Ergometrics is a human resource management firm specializing in pre-employment testing and job stimulation. The OTA has utilized this company for the pre-employment and promotional testing for all direct staff and supervisory staff. The usage to date has exceeded $5000.00. Be advised Cook County Procurement states there are other vendors that can provide this testing and is requesting an RFP for this service.

c) Mobile Health and Testing Services- The JTDC uses this services for random drug testing, TB testing, and EMS responders for Rapid Response Team pre-employment and annual physical testing.

d) Routine items not available on Marketplace such as property bags, chain of custody bags, log books, etc.
e) AMC Mechanical- The latest expenditure exceeded $6000.00 for repair of a refrigeration unit.
f) The contracted vendor for purchasing resident hand towels advised the JTDC hand towels would not be available for shipping for approximately two months due to the vendor sourcing issues. The JTDC used the authority granted to the OTA to be able to purchase resident hand towels absent a contact.
g) Furniture- The Cook County marketplace does not currently have a vendor for furniture.
h) Barber/Beauty Supplies – The Cook County marketplace does not have a vendor for beauty supplies.

The following are examples of expedited expenditures using OTA funds to secure goods and services:

a) Ice- the ice machine recently broke and 100 bags of ice was purchased through the OTA primarily for use for medical purposes.
b) Ice machine – As just stated the only ice machine in the facility became unrepairable. The RFP process would necessitate a four month process and OTA funds were used to purchase a new ice machine.
c) Canine Searches – the utilization of canines to search the building periodically for drugs has been funded through the OTA account.
d) Handyman –The OTA has employed a part time handyman to assemble furniture, repair furniture to avoid unnecessary purchases, hang bulletin boards, etc. Although Facilities Management does perform these duties, these tasks are low priority due to the large volume of work.

1. OTA Contracts – You requested copies of all contracts with vendors paid from the OTA contract. You also asked if no formal contract existed that a basis for retention and terms of billing to be provided.

Response: CareerBuilder is the only vendor paid with OTA Funds. Jim Anderson had requested the CareerBuilder contract agreement during budget preparations this fiscal year and the agreement was tendered to him. A copy of the CareerBuilder is included in this package for your review.  As we discussed at the September 5, 2014 meeting, continuation of this contract would be an OCJ decision and the recruiting, screening and hiring process will require processes to be developed in accordance with the OCJ policies and procedures. You were advised additional personnel may be required in the event you chose to not utilize the services of CareerBuilder.

2. You requested a description of the criteria used to justify obtaining goods and services outside the scope of Cook County Procurement procedures.

Response: As stated in the meeting, goods and services are obtained outside of the scope of Cook County Procurement procedures in the following situations:

a) To obtain goods or services when the $5000.00 maximum expenditure for any vendor has been exceeded in the fiscal year.
b) The goods or services required are not available on the Marketplace.
c) The goods or services can't be obtained from the contracted vendor in a timely manner

3. You requested a list of minimum requirements that should be included in policies and procedures for expedited expenditures or an in-house emergency fund.

Response: The OTA has a mechanism in place to manage expedited expenditures. The OTA is unable to list minimum requirements for OCJ policy and practice and the JTDC does not have experience in setting up such policies or procedures. This is a topic that is better suited for conversation between the two agencies to propose solutions to a current practice that is not sustainable absent federal court intervention. Jim Anderson advised the OCJ currently has an emergency fund available for use. At a minimum, the JTDC Executive Director should have access to an "emergency Fund" that allows for maximum flexibility subject to any required fiscal audit.

## Bed Capacity

You requested a written analysis for the basis of the JTDC functional capacity of 382 beds.

Response: A copy of the JTDC functional capacity policy 9.21 has been sent to you on several occasions. I have met with the Cook County Juvenile Judges and explained the basis for the calculation. As was indicated in the meeting on September 5, 2014, the functional capacity can be calculated in many ways and could change contingent on the number of females, admissions, Automatic Transfers and young vulnerable residents as well as the number of rooms considered inoperable. Static factors include the Prison Rape Elimination Act (PREA) mandate of a 1:8 staff ratio and the poor sight lines and building design further reduces the functional capacity on each housing unit. Further consideration was given to the number of residents with significant mental health needs which require increased supervision. In addition, the MIP requires a satellite office on each pod in order for mental health and medical staff to consult, exam and treat in a confidential setting.

The decision to maintain the current functional rated capacity of 382 or to change it should ideally be made with input by individuals who have experienced managing the youth in their care.

Data reflects an increase in violence and incidents when the population increases. It is unreasonable to expect the staff responsible for direct and continuous supervision, particularly in light of the fact that the facility presents so many obstacles, barriers and deficiencies, to be required to operate at a ratio greater than 1:7.

## Information Technology

1. You requested documentation of the history of the RMIS RFP process, the reasons that the JTDC reissued the RFP and the reasons why the vendors did not respond to the hosted on premise or hosted hybrid (on premise/cloud requirements contained within the scope of the second RFP, thus leaving the evaluation committee with only a cloud option to consider. You also requested a legal and financial justification for moving the JTDC Resident Management System into the Cloud along with an itemized list of all the security measures that are being contemplated for this project that will ensure the security and confidentiality of juvenile data resident in the Cloud, including compliance with the confidentiality of juvenile data resident in the Cloud, including compliance with the confidentiality requirements of Illinois Statutes and court rules.

Response: The RMIS is a capital project and as such the OTA is not the LEAD agency in the FRP process. The OTA does not have the liberty to call vendors to request additional information. Please be advised representatives from the OCJ have been actively involved with the RMIS RFP process since inception. Representatives from your office were voting members on the first RFP and are voting members on the current RFP. Cook County Procurement would not allow the OTA to have voting members on the committee. It is unfortunate that no one from the OCJ was present at the last demonstration of a potential vendor. It is my understanding the security issues were addressed in the RFP which representatives from your office have in their possession and was addressed further in a presentation by the vendor at which representatives from this OCJ was not present. As the RFP process has not been completed, any questions regarding the contents of the proposals must be addressed through Mr. Sanchez in Procurement. Your representatives are aware of this process as they have requested information through this process. Procurement has stated the vendors may not be asked to provide the hybrid solution at this juncture of the RFP.

The OTA and JTDC staff has no knowledge of the reasons why the vendors did not respond to the hosted hybrid requirement contained in the scope of the second RFP. It is my understanding that two of the vendors did respond to a hosted on premises solution.

The RFP process includes accessing the legal and financial justifications for all of the solutions presented. Representatives from the OCJ have been included and are voting members of the RFP. As the OCJ has voting members on the committee, perhaps they could ask procurement for the legal and financial justifications.

The history of the RMIS process is as follows:

The proposed Resident Management and Information System (RMIS) is a replacement for the existing JTDC resident information system, which is DSI. DSI is no longer supported by the product vendor, is operating on a Window XP platform, which is no longer supported by Microsoft. Additionally, physically moving the server or other configurations may crash the server. If the server crashes, there is no redundancy or recovery. There is no restore plan, and no one has attempted a restore from DSI backups before.

In 2013, in collaboration with the Bureau of Technology, JTDC staff engaged in a major business and workflow process analysis to develop the original RMIS RFP. The RFP was released, and responses were reviewed by an Evaluation Team, inclusive of representation from the Office of the Chief Judge IT Division. The Evaluation Team evaluated three proposals, with one vendor being evaluated/scored significantly higher than the others.

The vendor's same base product is being used by Illinois Department of Corrections, both adult and juvenile agencies, as well as the Cook County Sheriff Department of Corrections. During reference checks, Illinois DOC indicated the vendor solution was being hosted in the cloud. The Sheriff's IT representative indicated that although their vendor solution was being locally hosted, they wished they had chosen a cloud solution.

A locally hosted solution has significant hardware and personnel costs associated with it. In light of the experiences and recommendations of other Illinois product users, as well as an effort to obtain the most reasonable cost for implementing the solution, it was requested of the Office of Procurement that we request of the vendor to provide cloud hosted costs. In January 2014, The Office of Procurement legal opinion was that in order to obtain a cloud hosted cost, we would have to cancel the original RFP and reissue a new RFP. At this point a meeting was held between representatives from the OCJ, BOT and JTDC and the consensus was to issue a new RFP, requesting a cloud, hybrid and locally hosted solutions. Again, working with the Bureau of Technology, a revised RFP was developed, inclusive of requirements for a more rigorous training solution component than existed in the original proposal. The cloud and hybrid cloud security requirements were provided by the BOT. The RFP was provided to the OCJ IT representative for review prior to issuance.

The RFP was reissued, and at the end of June 2014, the same three vendors responded, and the proposals were again evaluated by the Evaluation Team, with one vendor scoring significantly higher than the other two vendors. One proposal provided two options one for a public cloud hosting and one for private cloud hosting. This vendor had offered a locally hosted solution in their first proposal; they did not offer a locally hosted proposal in the second proposal.

It is my understanding none of the proposals included the requirement for a hybrid solution. A representative from your office requested all three potential vendors be allowed to present a hybrid solution and the request was not granted by Cook County Procurement.

2. Cermak/Cerner Contract – You requested the current status and progress on the contract negotiations with Cermak/Cerner.

Response: A teleconference with representatives from Capital Planning, Cook County Health and Hospital Systems and OTA Consultant Bob Dugan is scheduled next Wednesday, September 24, 2014 to review the latest proposal from Cerner.

3. JTDC IT Transition from BOT to OCJ – You requested a comprehensive list of all major IT projects that were recently implemented, or planned to be implemented at the JTDC. You requested the scope of the project, cost of the project, the vendor providing the service, initial costs of the services being provided, terms of the contract, and any perpetual costs associated with the implementation of these services such as on- going support and maintenance, hosting services, any ancillary services and employee costs. You also requested copies of the contracts. In addition you requested JTDC operational and capital budgets for (FY 2014 and FY 2015) that are earmarked toward technology operations and initiatives.

RESPONSE: The major IT projects recently implemented or planned to be implemented at the JTDC are as follows:

a) Video Surveillance and Rounds Tracking Project (project near completion). The Vendor for this project was SDI. The total cost for this project is estimated at $4,848,000. A copy of the contract is attached.

b) Navex Global- Policy Software (purchased and operational). A copy of the contract is attached. The cost of the project was $15,268 and includes all costs for two years. Support costs will need to be negotiated the third year.

c) RMIS-vendor has not been identified, contract is not in place. OCJ has a copy of the RFP.

d) Cerner Medical Records- This will be a sole source contract. The scope of the project, costs and terms of contract have not been finalized. The contract will be forwarded when available.

A copy of the FY 2014 and the proposed FY 2015 budgets are attached. Be advised these documents have been tendered to you or your representatives on numerous occasions and has been posted on the internet under the Office of the Chief Judge.

4. You acknowledged, the OTA, Cook County Bureau of Technology is in agreement that only partial, rather than substantial compliance with provisions of the MOA and MIP can be accomplished prior to October 1, 2014. You requested a description of the minimum requirements you recommend for partial compliance by that date.

RESPONSE: The Quality Assurance provisions of the MIP and MOA contingent on the implementation of a new RMIS. As you know this project is in the FRP process. There is no expected progress that can be accomplished prior to October 1, 2014 regarding the RMIS.

As stated previously in this report, a purchase order for renovations of the outdoor recreation space is anticipated prior to October 1, 2014. The gymnasium renovations are not expected to be completed by to October 1, 2014.

All of the provisions "subject to an orderly transition" are not expected to be resolved prior to October 1, 2014.

## LABOR CONTRACT/NEGOTIATIONS

1. You requested a list of unions currently represented at the JTDC and a copy of the most recent CBA for each. In addition, you have requested documentation with respect to each CBA issue as to which you foresee impact and the corresponding specific provision of the contract.

RESPONSE: There are three unions represented at the JTDC: Teamsters Local 700 and AFSCME Local 1767 and AFSCME 3696. You and representatives from your office has been provided with copies of these CBA's on multiple occasions and have been involved in recent contract negotiations with

Teamsters Local 700 and AFSME. I have once again included the collective bargain union agreements in this package. I respectfully request that meetings between the labor relations representatives from our respective offices meet to discuss labor related issues. These issues are complex and will require some history and verbal interactions to address this transition issues. Although there are issues related to the previous CBA's which expired in 2008, the majority of the issues will revolve around policies and systems implemented by the OTA that are not addressed in the last CBA. These issues simply cannot be adequately addressed absent significant dialogue.

2. You reiterated that there were are 30 pending cases and more than 300 pending requests for arbitration and that staff selection and training processes be finalized prior to transition. You requested all staff training materials utilized by the OTA and suggested that the respective legal and human resources communicate with regard to pending labor and legal matters.

RESPONSE: I concur that the legal and human resources staff from our respective offices needs to communicate and will make staff available whenever requested. There may be some misunderstanding regarding the need for a finalized process for staff selection and training. I want to be clear there are no issues with the content or delivery of staff training. The hiring process (recruitment, screening, testing, background checks and training) need to be transitioned from an OTA function to an OCJ function. As you know, the OTA has utilized CareerBuilder for employee recruitment and screening and some human resource tasks associated with hiring new employees and promotions. Transition decisions that require consideration include the following:

a) CareerBuilder – As OTA funds will not be available for this service post transition, funds have been placed in the contractual line item for FY 2015 should the OCJ chose to continue with this service and appropriate JTDC positions to accomplish the same task have also been included in the budget . As CareerBuilder is not the only agency providing these services, it is anticipated Cook County Procurement will at a minimum want these services to be awarded through the Cook County Procurement process. The JTDC currently uses the Cook County Taleo system for applicant tracking and recruiting. The OCJ will need to decide to continue with the Cook County Taleo system or purchase an independent applicant tracking program. Training needs to be considered in planning for the on boarding of staff. The vigorous process of recruiting, phone screens, testing, interviews and background checks is followed by six weeks of training before a new employee may assume post duties. As we also mentioned, we have offered employment contingent on AOIC Certification which is not consistent with current court practices. It is recommended the human resource agents from our respective offices meet to identify other potential issues (as we are NOT familiar with OCJ procedures) to identify other potential issues that may need to be addressed. Staff training materials consist of thousands of pages of documents. Should you decide you need a copy of all staff training documents, please advise if you would like them via flash drives or hard copies.

## Human Resources

You requested copies of any written policies or criteria the TA has used with regard to discipline of employees not covered by collective bargaining agreements.

RESPONSE: There are no policies regarding criteria the TA has used in regards to discipline of employees not covered by collective bargaining agreements. Generally speaking, with few exceptions, non- union employees are afforded due process at pre-disciplinary hearings and a grievance process absent arbitration is allowed. JTDC Policy 3.39 Employee Grievance Procedure is included in this package.

## Recruitment/Screening/Hiring Process

You requested a detailed explanation of how the Career Builder process works and what alternatives were explored prior to selecting the current process. You also requested a copy of the career Builder contract and the contact information for the account executive responsible for the JTDC issues.

RESPONSE: A copy of the CareerBuilder contract is attached. The account executive responsible for the account is Michael O'Dell, his work number is 202-652-2833 and his email address is Michael.O'Dell@careerbuilder.com. The OTA interviewed several Personnel Agencies in 2007 and 2008 before selecting CareerBuilder as a vendor. CareerBuilder possessed experience in working with governmental agencies and maintained an applicant tracking and nationwide recruitment platform which surpassed all other agencies interviewed at the time. At the time of the initial contract, a long term commitment was not contemplated. Due to problems with the Cook County Taleo program, multiple extensions have been awarded since the initial contract.

## General Transition Strategy

1.  Question: What clarification of structure and scope is required beyond the language of 55 ILCS 75/3 (statutory transfer, grant of authority)?

RESPONSE: I would suggest a meeting with various Cook County personnel regarding completing designated forms that may be associated with signature authorization for payroll and purchasing documents. The OTA is unaware of any other clarification of structure and scope required.

2.  Question: What time frames do you require for completion of RMIS, gym renovations, and recreation yard renovations?

RESPONSE: The TA would be satisfied with approved purchase orders to the vendor for the gym renovations and recreation yard renovations. It is my understanding a purchase order for the outdoor

recreation yard may be secured by the end of next week and it is possible a purchase order may be secured for the gym renovations prior to December 1, 2014 depending on the scope and costs of the project. The TA would be satisfied with an executed contract approved by the County Board for the RMIS project. The RMIS project is projected to take 18 months for completion post contract execution.

3. Question: How much and what kind of additional document storage space is required?

RESPONSE: As stated in the September 5, 2014 meeting, there is much work to accomplish after transition regarding records retention. A request was sent through appropriate channels last year to the Facilities Management Space Committee. The Space Committee indicated an updated records retention application was necessary and a list of documents, approximate number of boxes and a date the documents could be destroyed would need to be submitted prior to accommodating our request. The number of documents and boxes continue to grow. It would not be a prudent use of staff resources to submit a new application at this time as forms will need to be modified or deleted once the RMIS has been implemented. The JTDC is in need of temporary space for approximately 1000 banker's boxes with human resource and business office documents, resident safety and security logs, National School Lunch Program documentation, housing unit log books and other operational documentation.

4. Question: How much and what kind of additional office space is required?

RESPONSE: The JTDC will be in need of seven (7) cubicles for quality assurance analysts, one program manager (ASC), two offices (recruiter and human resource analysts), four (4) temporary IT personnel for RMIS Implementation, five (5) temporary offices for Cermak IT Personnel and a computer lab that can accommodate 20 employees. In addition, space is needed for the Rapid Response Team's workout room. There is no space within the JTDC to accommodate the RRT workout room that does not contribute to court room disruption. There is significant space not being utilized on the west side of the Juvenile Justice complex yet there is space currently being utilized by Probation on the east side (JTDC) that otherwise could be used by the JTDC to offset the inadequate work space for staff.

**OTHER ISSUES**

You requested the OTA's minimal requirements for either partial or substantial compliance in the following areas:

1. Rated Bed Capacity

RESPONSE: The TA has established a functional rated bed capacity of 382 residents. There is not a compliance issue associated with the functional rated bed capacity at this time. The JTDC is in partial compliance with the MOA/MIP requirements associated with the overcrowding provisions. The provisions with partial compliance are outside the scope of the JTDC (i.e. The JDAI Executive Committee formulating a plan for overcrowding), Overcrowding and bed space will be an issue in the future.

2. Raise the Age Impact and plan for overcrowding

RESPONSE: There are no requirements in the MIP and MOA associated with Raise the Age Impact. Overcrowding due to Raise the Agent legislation will be an issue post transition.

3. CPS Educational/Vocational/Alternative Education Services (juveniles and adult services)

RESPONSE: The educational provisions of the MOA/MIP are in substantial compliance. The educational program is not in compliance with Illinois Detention Standards as:

- special education individual plans are not followed;

- teacher to student ratio is not in compliance

- vocational and alternative education programs for those residents who high school is not an appropriate option

- Alternative and vocational programs for youth who have their high school diplomas or GED's are not available.

The TA has no requirements prior to transition regarding educational services.

4. Medical and Mental Health Services

RESPONSE: Medical and Mental Health Services are considered to be in substantial compliance with the overall requirements of the MIP/MOA. There are provisions of the MOA and MIP that can't reach substantial compliance prior to transition (quality assurance, and access to medical records) absent the implementation of the wireless Cermak Cerner electronic medical records project. In addition, implementation of an acceptable solution for the distribution of medication has been problematic. You may anticipate hiring delays post transition as the result of the impact of bargaining union provisions, the Cook County Bureau of Health and Hospital Systems hiring process and Shakman requirements. The OTA has regularly intervened via written letters to the Cermak Health Care and Cook County Bureau of Health and Hospital Systems to maintain the current staffing.

5. Support Clerk Positions

RESPONSE: There are two support clerks (employees prohibited from working with residents) at the present time. One of them is prohibited from contact with residents by order of the Federal Court. Support Clerk positions are not addressed in the MOA/MIP therefore there are no minimal requirements for compliance.

6. Retention of Consultants

Response: There are no MOA.MIP requirements to maintain consultants. As we have discussed, funds have been requested in the FY 2015 budget in the event the OCJ requires their continued services.

There are two provisions of the MOA/MIP that are Subject *to an Orderly Transition* to and effecting a seamless transition. The duties related to the OTA Technology Consultant and the Deputy Transitional Administrator responsible for employee relations (discipline and grievances) are subject to *an orderly and seamless transition*. The Technology Consultant's duties post transition will include implementation of the RMIS. The processes in place regarding employee relations are not sustainable post transition. The OCJ will need to develop a process in accordance with collective bargaining union agreements and decide of specific actions related to non-collective bargaining unit employees.

7. Process of managing juvenile and criminal court orders

Response: The MIP provisions regarding court orders relative to placement in the medical unit are in substantial compliance under the direction of the OTA. Juvenile Court Judges continue to order residents to be housed on the medical unit for protective custody and without the benefit of a medical or mental health opinion as to if this housing assignment in contraindicated. The JTDC has sought medical and mental health opinions and notified the appropriate Judge of the evaluation and the course of action taken by the JTDC regarding the court order. In addition, Juvenile Court Judges have ordered inappropriate use of the JTDC Transportation Officers to affect an arrest without a warrant, provide transportation and supervision at community activities, funerals, wakes etc. These staff are not law enforcement officers, not trained for these purposes and do not have the means to protect the youth in their care or themselves.

8. JTDC Advisory Board appointed by the Cook County Board President's Office

Response: There are no MOA/MIP references to the Advisory Board.

9. JTDC 501c(3) status

Response: There are no MOA/MIP references to the JTDC 501c(3). The 501c(3) is not controlled by the OTA or JTDC. It is an independent, self-governed body with a defined missions and required Constitution/by-laws.

In closing, I am of the opinion, absent the appointment and on boarding of an Executive Director, little can be accomplished. There are decisions to be made regarding significant issues and tasks related to those decisions are will not be able to be completed in a four (4) to six (6) week time frame necessary for a transition by December 1, 2014.

I feel the need to reiterate, the transition tasks require dialogue between the operational entities' of both agencies. The OTA does not have the prerequisite knowledge related to OCJ operations and cannot pretend to anticipate or predict the direction the OCJ would choose to pursue regarding these important matters.

The status of the transition was discussed with Judge Holderman on September 18, 2014. Judge Holderman has scheduled the next status hearing for October 7, 2014 at 10 am and has invited the newly appointed Executive Director and the OCJ labor representative, Mr. Gagliardo to this status hearing.

As the parties to the Doe case have requested on-going information on the progress of transition, I will be including the Doe Parties on all correspondence with your office.

There have been many evaluations and assessments of the JTDC, none the least of which is the AECF Assessment commissioned by your office, the Suicide Risk Assessment, PREA Assessment and the NCCHC Accreditation etc. which identify in detail the strengths of the JTDC operation. You have been provided with copies of each of the referenced reports.

Sustaining reform effects has been most challenging for jurisdictions after federal intervention has been withdrawn. I hope you share my belief the transition process requires the upmost attention to ensure sustainability.

I look forward to an aggressive schedule of meetings over the coming weeks and months.

Sincerely,

Earl L. Dunlap (JA)

Earl L. Dunlap
Deputy Transitional Administrator

Cc:     Benjamin Wolf, Roger Baldwin Foundation of ACLU
        Tom Geraghty, Northwestern University School of Law
        John Curran, State's Attorney's Office
        Andrew Creighton, State's Attorney's Office
        Brenda Welch, Deputy Transitional Administrator, JTDC
        Teresa Abreu, Acting Executive Director, JTDC
        Elizabeth Mazur, Loevy & Loevy
        Steven Art, Loevy & Loevy
        James Anderson, Chief Financial Officer
        Stephen Brandt, Acting Director, Legal Research Division
        Michael Carroll, Director of Information Services
        Laura Kelly, Interim Director of Human Resources